IN THE UNITED STATES DISTRICT COURT FILED
FOR THE DISTRICT OF NEW MEXICO

02 MAR -4 PM 1:05

WILLIAM BIRKLEY,

    Plaintiff Pro Se,

vs.                                               CIV NO. 01-0350 M/WWD

PRI AUTOMATION OF NEW MEXICO,
INC., INTEL, a Delaware Corporation,
each a corporation and their shareholders
and any future owners,

ARCHDIOCESE OF SANTA FE,
ARCHDIOCESE OF PHOENIX,
each a corporation,

STEVEN HOUIDOBRE,
a.k.a. "Sir Weed", DENNIS MILINAZZO,
a.k.a. "Sir Milly", BOB GASSIOT,
JAMES CONSTAND, MARK BRITTON,
STEVEN P. WENTZELL, FR. KARL LE CLAIRE,
a.k.a. "Lionmaster", GEOFFREY WATTLEY,
SANDRA ABEYTA, each an individual,
their spouse, heirs and estate, if any.

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before me on a motion to dismiss filed by Defendants Intel Corporation and its employees Geoffrey Wattley and Sandra (Abeyta) Linhares and on a motion for summary judgment filed by Defendant PRI Automation, Inc. and its past and present



employees Stephen Houidobre, Dennis Milinazzo, Bob Gassiot, James Constand, Mark Britton and Steven P. Wentzell. Having reviewed the motion to dismiss for failure to state a claim filed by the defendants Intel Corporation and its employees (Intel defendants) and the plaintiff's response, I find that the motion is well taken and will be granted on all claims. The summary judgment motion of the defendants PRI Automation and its employees (PRI defendants) is well taken and will be granted. I also, *sua sponte*, dismiss the amended complaint against the defendants the Archdiocese of Santa Fe, the Archdiocese of Phoenix and Father Karl Le Claire (Archdiocese defendants) for failure to state a claim upon which relief can be granted.

# INTEL DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

## STANDARD OF REVIEW

A motion to dismiss for failure to state a claim upon which relief can be granted under Fed.R.Civ.P.12 (b)(6) should only be granted when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). When examining a complaint under this rule, I am to presume that all well-pleaded allegations are true and viewed in the light most favorable to the non-moving party. Sutton v. Utah State School for the Deaf and Blind, 173 F.3d 1226 (10th Cir. 1999).

Plaintiff William Birkley is proceeding pro se in this lawsuit. In examining this amended complaint, I am mindful that the amended complaint must be liberally construed and held to a less stringent standard than a complaint drafted by counsel. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972). However, dismissal under Rule 12 (b)(6) is appropriate when the amended

complaint asserts a legal theory that is not cognizable as a matter of law or fails to assert facts which would lead to a recognizable legal claim. *See Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1359 (10th Cir. 1989). The issue in reviewing the sufficiency of a complaint is not whether the plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence in support of his claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

FACTUAL BACKGROUND FOR MOTION TO DISMISS

Plaintiff William Birkley was employed as a Field Service Engineer by PRI Automation Inc. (PRI) PRI was a subcontractor at the Intel plant in Rio Rancho, New Mexico and provided engineers to work at the plant. Mr. Birkley and the other named PRI defendants were PRI engineers who worked at the Intel plant as PRI employees.

In July 1998, Mr. Birkley filed a complaint with the PRI Human Resources office against a PRI co-worker, defendant Steve Houidobre. Mr. Birkley states that Mr. Houidobre harassed him because he did not belong to a religious organization called "Warriors of Christ." This group was supported by the two Catholic Archdioceses named in the complaint and was led by Father Karl Le Claire who was known as "Lionmaster". The "Warriors of Christ" had infiltrated PRI and Intel and had placed their members in supervisory and management positions. The group had used the internal e-mail systems of Intel and PRI to promote themselves and proselytize. The "Warriors of Christ" was engaged in hate crime activity and promoted a paramilitary image.

PRI supervisor Bob Gassiot transferred the Plaintiff to another night shift at the Intel plant. In that shift, Plaintiff did not have personal contact with Steve Houidobre. The transfer to

3

the new shift disrupted Plaintiff's personal and professional life. On the new shift Plaintiff was harassed by PRI employees Mark Britton and James Constand. The PRI employees accused Plaintiff in front of an Intel employee Mr. Wattley that Plaintiff was sleeping in the plant during his work shift.

Intel Corporation made some changes to its equipment and workplace which caused or could have caused injury to Mr. Birkley. These included modifying the ladders which made them an electrocution hazard, modifying the ladders by adding wheels to them so that the ladders no longer fit into the storage racks safely and operation of equipment without radiation shields in place causing Plaintiff to be exposed to harmful radiation.

In September 1999 Plaintiff injured his back attempting to place one of the modified ladders back into its storage rack. Plaintiff received medical care through Workers' Compensation but it was inadequate care and Plaintiff sustained further injuries as a result. Plaintiff was also suffering from depression and had sought help from PRI's Employee Assistance program.

On October 30, 1999, an Intel employee, Defendant Geoffrey Wattley, discovered Plaintiff asleep at the Intel plant during the work shift. (Sleeping at the Intel plant during one's work shift was forbidden by Intel policy for safety reasons. PRI employees had been warned about not sleeping on the job. It was Intel company policy to walk an employee or subcontractor's employee out of the plant if the employee was found asleep on the job). Mr. Wattley acted in a vengeful and malicious manner which caused Plaintiff to be walked out of the plant.

Shortly thereafter Mr. Birkley was terminated from his employment with PRI as a result

4

of the October 30, 1999 sleeping incident. PRI employee Bob Gassiot and Intel employee Sandra (Abeyta) Linhares held a hearing to investigate the sleeping on the job incident involving Mr. Birkley and Mr. Wattley. They concluded that Mr. Birkley was asleep during his work shift on October 30th and that he had been properly walked off the Intel premises in accordance with Intel company policy. Mr. Birkley was not invited to this meeting.

Mr. Birkley signed a Release of Claims with PRI on November 18, 1999 releasing PRI and its employees from all claims that could be brought by Mr. Birkley arising from his employment with PRI and his termination. Mr. Birkley received seven weeks of salary as compensation for the Release of Claims. As a result of his termination, Mr. Birkley was unemployed for fourteen months, lost his medical insurance, could not pay his medical bills or receive proper medical care and suffered other monetary damages.

## CAUSES OF ACTION ALLEGED AGAINST INTEL CORPORATION

The Amended Complaint contains a narrative of facts and conclusions, called the Background, and lists twenty-three "supporting laws" which include New Mexico, Arizona, and Massachusetts civil, criminal, and sentencing statutes, federal laws and state and federal constitutional amendments. It does not list any counts or causes of action. Counsel for the Defendants have had to tease out the causes of action from the Background trying to determine what exactly the Plaintiff is asserting as his legal claims. There are five factual allegations made against the Intel Defendants: 1) that Intel failed to monitor its internal e-mail system, 2) that Intel failed to follow Intel company policies "as regards Plaintiff's treatment", 3) that an Intel defendant George Wattley acted in a vengeful and malicious manner towards Plaintiff, 4) that

5

Intel employee Sandra (Abeyta) Linhares held a meeting to determine if Plaintiff was asleep on the job and failed to invite Plaintiff, and 5) that Intel caused unsafe working conditions where Plaintiff worked which caused harm to the Plaintiff.

Failure to monitor one's internal e-mail system does not rise to a cause of action cognizable under federal or New Mexico law. There are no facts alleged in the amended complaint which could be construed to state a claim of defamation against Intel Corporation under New Mexico law. *Gruschus v. Curtis Publishing Co.* 342 F. 2d 775, 776 (10th Cir. 1965). There are no allegations of a false statement made by Intel or one of its employees, which was published and which caused injury to the Plaintiff's reputation. Even under a liberal construing of the facts contained in the amended complaint, I cannot find any support for a recognizable cause of action against Intel Corporation which involves the use or monitoring of the internal e-mail system.

Plaintiff also claims that Intel Corporation and its employees failed to follow Intel company policies as regards Plaintiff's treatment and that one of the Intel employees Mr. Wattley acted toward Plaintiff in a vengeful and malicious manner. In PRI's summary judgment motion, PRI explained that Intel Corporation had a strict company policy against sleeping on the job for safety reasons. According to an affidavit filed in support of PRI's summary judgment motion by PRI employee Robert Gassiot, Intel had instructed PRI that sleeping on the job was strictly prohibited and PRI had in turn warned its employees against sleeping on the job. (Exhibit F, Memorandum of Law in Support of PRI's Motion for Summary Judgment, Doc. No. 46 ).

Mr. Birkley does not deny that he was asleep during his work shift on October 30, 1999. Rather his claim appears to be that he was "told on" by two PRI employees, discovered by an

Intel employee Mr. Wattley who then acted in a vengeful and malicious manner, walked him off the plant premises, and treated him in a manner that was inconsistent with Intel company policies. Mr. Birkley does not deny that it was against Intel company policy to sleep at the plant during one's work shift.

A liberal reading of the factual background leads me to conclude that Plaintiff is trying to allege a cause of action of employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000 et seq., on the part of Intel and its employees. However, the Amended Complaint fails to allege even the necessary pre-requisites which would lead to a claim for employment discrimination against Intel. Intel did not employ Mr. Birkley and does not come under the definition of employer of Title VII. 42 U.S.C. §2000e(f). He was a subcontractor's employee at Intel's plant who violated a well-known plant rule and suffered the consequence of becoming unemployed by PRI, not Intel, as a result. The allegations contained in the Amended Complaint fail to allege a cause of action against Intel for any kind of employment discrimination which would be recognizable as a legal claim.

Likewise, the failure to invite Plaintiff to a meeting held between Intel employee Sandra (Abeyta) Linhares and PRI employee Bob Gassiot does not rise to a recognizable legal claim. Plaintiff states that he was not invited to the meeting and therefore was unable to defend himself. Apparently the meeting was held to determine the facts of the Oct. 30, 1999 situation, whether Plaintiff had indeed violated an Intel plant rule during his work shift, and whether the Intel employee acted properly in walking Plaintiff out of the plant. Intel was not Plaintiff's employer and therefore did not owe him the duty to be invited to the meeting or the opportunity to defend himself.

The allegations contained in the Amended Complaint as to the unsafe working conditions are that Intel modified its ladders which made them an electrocution hazard, added wheels to the ladders which made the ladders no longer fit safely into their storage racks and operated other vendors' equipment without radiation shields in place. The damages alleged are that Plaintiff injured himself trying to place a modified ladder back into its storage rack and that Plaintiff was exposed to harmful radiation.

The back injury caused by placing a modified ladder in its storage rack was addressed as Plaintiff's Amended Complaint narrates by the Workers' Compensation system provided by Plaintiff's employer PRI. Mr. Birkley alleges that the medical care he received from the Workers' Compensation system was "not proper". The federal courts are not the forum in which to bring a complaint against the Workers' Compensation system. The New Mexico Workers' Compensation Act, N.M.S.A. §52-1-1 et seq. (Repl.1991), is an inclusive statutory scheme for the treatment, compensation and remediation of injuries suffered in the workplace. A worker, dissatisfied with the treatment received or the decisions made under the Workers' Compensation Act, has a statutory remedy available to him codified in N.M.S.A. §52-5-5 et seq. (Supp. 2001). This federal court has no subject matter jurisdiction to review disputes arising under the Workers' Compensation Act. Subject matter jurisdiction for complaints arising under the Workers' Compensation Act lies exclusively in the state administrative and judicial system.

Under New Mexico law, a landowner is held responsible for unsafe conditions on his land. *Otero v. Jordan Rest. Enter.*, 922 P.2d 569, 573 (N.M. 1996). This duty extends to the owner or operator of a workplace who is charged with providing a safe work environment for the employees of a subcontractor working on the premises. *Hinger v. Parker & Parsley Petroleum*

*Co.*, 902 P.2d 1033 (Ct. App. N.M. 1995). Further, this duty extends to the equipment provided by the owner or operator of the workplace. *Hinger, supra*. However, it is also axiomatic that to maintain a claim for damages from an unsafe working environment, the Plaintiff must have suffered some harm from the unsafe conditions. See, e.g. *Tipton v. Texaco, Inc.*, 712 P.2d 1351 (N.M. 1985).

The harm which could have been caused to Plaintiff by the modification of the ladders is merely speculative. Plaintiff does not allege that he has been electrocuted or otherwise injured by the ladders' modification. Likewise, Plaintiff's complaint about the lack of radiation shields on certain equipment at the Intel plant, does not rise to a recognizable tort on the part of Intel. Plaintiff does not allege that he has been injured by the lack of radiation shields. The amended complaint contains only a conclusory statement that he has been "exposed to harmful radiation". Unless Plaintiff has been injured in fact by an action or inaction of the Defendant Intel, Plaintiff's complaints do not rise to a recognizable cause of action in tort or otherwise. Dan B. Dobbs, *The Law of Torts* §166 (West Group, 2001).

In conclusion, even a liberal and generous reading of the Plaintiff's pro se Amended Complaint fails to allege facts which would lead to a cause of action against the Defendant Intel or its employees Geoffrey Wattley and Sandra (Abeyta) Linhares. Plaintiff was not employed by Intel, nor has he alleged that he was injured by any actions on the part of Intel except for his back injury which was addressed by the Workers' Compensation system. Plaintiff's Amended Complaint fails to state a claim against the Intel Defendants upon which relief can be granted under Fed. R. Civ. P. 12 (b) (6) and will be dismissed as against the Intel defendants.

# SUMMARY JUDGMENT BY PRI DEFENDANTS

## STANDARD OF REVIEW OF SUMMARY JUDGMENT

A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). Initially, the moving party bears the burden of showing the absence of a genuine issue of material fact. *Celotex Cop. v. Catrett*, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-moving party to come forward with evidence showing that there is a genuine issue of material fact. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56 (e). This may be done through reference to the pleadings, depositions, answers to interrogatories, admissions on file and affidavits. Fed. R. Civ. P. 56 (c).

The Court's role in a Summary Judgment motion is to determine whether a genuine issue exists as to one or more material facts. In making this determination, the court must construe the facts presented by the parties in the light most favorable to the non-moving party. *Magnum Foods Inc., v. Continental Casualty Co.*, 36 F.3d 1491, 1497 (10th Cir. 1994).

## FACTUAL BACKGROUND FOR SUMMARY JUDGMENT

Plaintiff Mr. Birkley was terminated from his employment by PRI on November 8, 1999. Intel had decided that it would not allow Mr. Birkley to work at any of its sites and had informed PRI of this decision. PRI had no other work for Mr. Birkley to do in the State of New Mexico so he was terminated from employment with PRI. PRI submitted a Release of Claims to Mr. Birkley which, if signed by him, would release PRI, its employees and assigns from any and all

claims and suits arising out of Mr. Birkley's employment with PRI and his termination. The Release of Claims is attached as Exhibit C to the Memorandum of Law in Support of PRI's Motion for Summary Judgment (Doc. No. 47). In return, PRI offered Mr. Birkley five weeks of his current salary.

Mr. Birkley met with his supervisor, PRI employee Robert Gassiot, on or about November 8, 1999, who presented the Release of Claims form and the written offer of five weeks severance pay. Mr. Birkley said he wanted to take some time to look over the offer and think about it. A few days later, Robert Gassiot put Mr. Birkley in touch with an employee of PRI's Human Resource Department in Massachusetts so Mr. Birkley could discuss the severance package. As a result of those discussions, PRI agreed to increase the severance package to seven weeks of pay. (Affidavit of Robert Gassiot, Exhibit F (Doc. No. 47).

On November 18, 1999, Mr. Birkley and Mr. Gassiot signed and dated the Release of Claims. It was witnessed by a friend of Mr. Birkley's who also signed the Release. The Release became effective seven days later when Mr. Birkley failed to exercise his right to revoke the Release. PRI paid the seven weeks of severance pay although Mr. Birkley alleges that the payments were not sent to the correct address which had been noted on the Release of Claims.

DISCUSSION

New Mexico law, which governs this Release of Claims,[1] recognizes and gives full

---

[1] Mr. Birkley, a New Mexico resident, was employed in New Mexico by a Massachusetts corporation doing business in New Mexico. As PRI's counsel has noted the Release does not contain a choice of law clause. However, since the Release was contractual and generally, contracts are to be construed by the law of the state in which they are created and to be

11

import to releases for all injuries, known and unknown, at the time of the settlement and release of the dispute. *Smith v. Loos*, 431 P.2d, 78 N.M. 339 (1967). Neither party is alleging mutual mistake and Mr. Birkley is not alleging he was under duress or coercion when he signed the Release of Claims.

The Release itself advised the Employee to consult with an attorney before signing the Release of Claims. The Release was available for the Employee to sign for at least twenty one days. Mr. Birkley took approximately ten days to discuss and negotiate the terms of the Release.[2] In addition, he had seven days after signing during which he could revoke the Release which he failed to do. Now, despite the plain language of the Release of Claims, he has attempted to bring a lawsuit on the very claims which he released in the Release of Claims.

Every action which can be extrapolated from the narrative of facts and conclusions in the Background in the Amended Complaint against the PRI Defendants has been released by Mr. Birkley in the Release of Claims.[3] He may not bring any type of action against PRI, or its former or present employees for any claim arising out of his employment or his termination, "including, but not limited to, Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Americans with Disabilities Act of 1990, ... and any other applicable federal, state, or local employment discrimination stature [sic] or ordinance." (Release of Claims, Exhibit F., (Doc. No.

---

performed, for purposes of this decision, I am assuming the law of the State of New Mexico applies to the Release of Claims.

[2] Mr. Birkley successfully negotiated an additional two weeks of severance pay during this ten day period which was noted on the Release of Claims.

[3] PRI agrees that the Release of Claims does not release any Workers' Compensation claims which Mr. Birkley may have.

47). The Release also specifically mentions and releases claims which could be brought under the Age Discrimination in Employment Act of 1967.

The Release of Claims is clear and unequivocal; it bars this lawsuit and any other lawsuit or charge brought against PRI and its former and present employees arising out of the Plaintiff's employment with PRI and his subsequent termination. I find no ambiguity in the Release. I do not find the terms of the Release of Claims are unreasonable. The ten day negotiation period including the phone calls to the PRI Human Resources Department by Mr. Birkley, the successful negotiation by Mr. Birkley for two more weeks of severance pay, the presence and signature of the witness, and the seven day revocable period are all evidence of a well thought out and knowing decision by Mr. Birkley to release his possible or potential claims against PRI. See, e.g. *Ellison v. Lovelace Heath Systems*, 2001 WL 33126910 (D.N.M. 2000) (a former employee who signed a similarly written release is barred from bring suit against her employer or the parent corporation). The Release of Claims bars this lawsuit against PRI and its employees. Therefore, I find that the motion for Summary Judgment on behalf of the PRI Defendants is granted as to all claims against them.

# CLAIMS AGAINST ARCHDIOCESE DEFENDANTS AND FATHER LE CLAIRE
## FACTUAL BACKGROUND

A group called the "Warriors of Christ" had infiltrated PRI and Intel and had placed its members in supervisory and management positions in both companies. The motto of the "Warriors of Christ" states that "our fight is not against flesh and blood, but against the rulers, against the authorities, against the powers of this dark world and against the spiritual forces of

evil in the heavenly realm". The group had a logo involving swords and robed dress which promoted a paramilitary image. It was engaged in hate crime activity. Its members referred to themselves as Sir [nickname]. The members used the e-mail systems of PRI and Intel to promote themselves and proselytize. The group was backed by Father Karl Le Claire, the Archdiocese of Santa Fe and the Archdiocese of Phoenix.

## SUA SPONTE DISMISSAL OF CLAIMS AGAINST ARCHDIOCESE DEFENDANTS

The sole allegation against the two Archdioceses and the individually named priest is that the "Warriors of Christ" was "backed" by the Archdiocese defendants and led by Father Le Claire. A liberal reading of the Amended Complaint fails to bring to light a single recognizable cause of action against the Archdiocese defendants.

Upon my own initiative, after examining the Amended Complaint, I have decided to dismiss the Amended Complaint against the Archdiocese of Santa Fe, the Archdiocese of Phoenix and Father Le Claire (the Archdiocese defendants) for failure to state a claim upon which relief can be granted. Fed.R.Civ.P.12 (b)(6). The Archdiocese defendants have not made a motion to dismiss or for summary judgment. However, having noted the paucity of facts alleged in the Amended Complaint as against the Archdiocese defendants and the utter dearth of any recognizable legal cause of action against the Archdiocese defendants, I shall, *sua sponte*, dismiss the complaint as against these defendants. See *Moll V. Carter*, 179 F.R.D. 609 (D.C. Kan. 1998). In fairness to the Plaintiff, since he had no notice of my intent to dismiss this portion of the Amended Complaint, 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §1357 (2d ed.1990), he may have ten days in which to attempt to amend

14

his complaint, once again, to attempt to state a cause of action against the Archdiocese defendants.

## CONCLUSION

Having reviewed the motion by the Intel defendants to dismiss the Amended Complaint for failure to state a claim, as well as the Plaintiff's Response, I find that the Intel defendants' motion to dismiss the Amended Complaint for failure to state a claim upon which relief can be granted is well taken and will be GRANTED. Having reviewed the PRI defendants' motion for summary judgment, the attached exhibits and affidavits, as well as the Plaintiff's response together with his exhibits, I find that the motion for summary on all claims against the PRI defendants is well taken and will be GRANTED . Upon reviewing the Amended Complaint, I *sua sponte*, DISMISS all claims against the Archdioceses defendants for failure to state a claim upon which relief can be granted, with permission to the Plaintiff to amend his complaint, within ten days, to state an actionable cause of action which could lie in this court.

_____
SENIOR UNITED STATES JUDGE